CRAWFORD *v.* MOORE.

Opinion delivered May 20, 1929.

*Brewer & Cracraft,* for appellant.

*Graham Moore* and *W. G. Dinning,* for appellee.

HUMPHREYS, J. Appellant brought this suit in the circuit court of Phillips County against appellees to recover $546.76, an alleged balance due for supplies which appellant furnished tenants on farms in the State of Mississippi, operated by A. W. Paslay and his wife, V. H. Paslay. The supplies were charged on the books of appellant to V. H. Paslay, but appellant alleged, as a

ground for recovery against appellees, that they were partners of the Paslays in the operation of the farms, and liable to him under their partnership agreement. E. P. Moore was president of his co-appellee, Interstate Grocer Company. The written contract referred to and made the basis of appellant's alleged cause of action was originally entered into between the Paslays and E. P. Moore, on the 31st day of December, 1924, and it, together with the addenda thereto, is as follows:

"This contract of employment, made and entered into this day and year hereinafter named, by and between A. W. Paslay and Vivian H. Paslay, his wife, parties of the first part, and E. P. Moore, party of the second part, witnesseth: Whereas , the parties of the first part are now indebted unto the Interstate Grocer Company of Helena, Arkansas, in large sums, and the condition of the first parties is such that they are not able to make payment of said amount at this time, and will not be able to do so until such times as they have been able to earn the necessary funds by farming operations; whereas, it is the desire of all parties that the first parties operate one or more places in the State of Mississippi during the year 1925 and the succeeding years until such times as said indebtedness can be paid; and whereas, the second party is now in a position to assist the first parties in connection with the farming operations above named, and in connection with financing their operations and providing them with the necessary equipment to enable them to successfully operate said plantations, and assist them in the marketing of such crops as may be raised on said plantations, all of which the second party hereby obligates himself and agrees to do; now therefore, in consideration of the agreements and undertakings on the part of the second party, the first parties agree to use their best efforts in operating the said plantations for the year 1925 and succeeding years until the indebtedness due and owing said Interstate Grocer Company is fully paid and discharged, and will devote all of their time and attention to the end that said operations may be profit-

able, and will operate the same in accordance with the suggestions as to the financing and marketing as may be made from time to time by the second party, and upon payment of the whole of said indebtedness that may be now due, or may be hereafter owing to the said Interstate Grocer Company by the joint efforts of all parties hereto, then and in that event all of the personal property of every kind used by the first parties in connection with the operation of said plantations, and all unsold crops of every kind, shall be deemed the joint property of the first parties and the second party hereto, and the first parties owning one-half of the said property and the second party the other half, it being understood that the one-half interest in said property shall be taken and considered as compensation for all services to be rendered by the second party in connection with the operation of said plantations, until such time as the indebtedness to the Interstate Grocer Company is fully paid.

"The first parties agree and obligate themselves to apply all funds arising from the operations of said place, aside from the amount required to pay rent and reasonable living expenses, toward the payment of the indebtedness to the said Interstate Grocer Company, and the first parties agree and obligate themselves to deliver all crops of every kind that may be sold from said place or places over to the said Interstate Grocer Company, for the purpose of applying the proceeds toward the satisfaction of their debt. The first parties agree to keep an inventory of all personal property used in connection with the operation of said place or places, and also an appraisement of each article used, and to deliver a copy of such inventory and appraisement to the second party herein.

"It is further agreed that, in the event it may appear at any time that the personal property used in connection with the operation of said place or places is not being properly cared for, or that same can be sold for a sufficient amount to pay off and discharge the indebtedness that may be then owing the said Interstate Grocer Com-

pany, then and in that event the parties hereby agree that said property be sold and the proceeds applied toward the payment of the indebtedness owing the said Interstate Grocer Company, and the balance, if any, be divided between the parties hereto in equal sums. It is further agreed that if the said indebtedness has not been paid within five years from the date hereof, then and in that event either of the parties hereto shall have the right to cause said personal property then owned by the second party to be sold, and the proceeds applied toward the satisfaction of the indebtedness owing the Interstate Grocer Company, so far as it may be necessary for that purpose, and the balance, if any, shall be divided between the parties hereto in equal shares.

"It is agreed hereby that the parties of the first part shall have the right to remove the said property to the State of Mississippi, and that the second party shall have a lien on said personal property for such amount as may be due him, and for services to be rendered, and that the first parties shall not sell or dispose of any part of said property without the consent in writing of the second party.

"Witness our hands this the 31st day of December, 1924.

> "V. H. Paslay,
> "A. W. Paslay,
>> "Parties of the first part.
> "E. P. Moore,
>> "Party of the second part.

"P. S. Reasonable living agreed to be $125 per month.

"These addenda made to the attached contract, bearing date of December 31, 1924, by and between the said V. H. Paslay and the said A. W. Paslay, as parties of the first part, and E. P. Moore, party of the second part, witnesseth: It is agreed by and between the said parties that the terms, stipulations, conditions, limitations and provisions mentioned and set out in said contract

shall apply and become binding on all the parties hereto with reference to any other or additional lands that may be bought, leased or rented during the five-year period mentioned in said contract, and also with reference to the management, operation, or control of all such lands that may be purchased, rented or leased in the name of the first parties or either of them, in like manner and with like force and effect as if referred to and embraced in the said original contract.

"Witness our hands and seals this the ........day of........... 1925.

> "V. H. Paslay (Seal)
> " ................................... (Seal)
> "First Parties.
> "E. P. Moore (Seal)
> "Second party."

Each of the appellees filed a separate answer to the complaint, denying the alleged partnership, or that the written contract and addenda thereto constituted a partnership.

The cause was submitted upon the pleadings, the written contract with the addenda thereto, and other testimony introduced by the parties, at the conclusion of which the trial court instructed the jury to return a verdict in favor of appellees, and rendered a judgment in accordance with the verdict, from which is this appeal.

The written contract with the addenda thereto, made the basis of appellant's suit, is unambiguous, so it became the duty of the trial court to declare its purpose and intent. The construction thereof was a question for the court and not for the jury. By directing a verdict for appellees and dismissing appellant's complaint the trial court ruled, and correctly so, that the written instrument did not constitute a partnership agreement between the parties thereto. An analysis of the contract reflects that the parties thereto expressly declared it to be one of employment. By the terms thereof E. P. Moore agreed to assist the Paslays in financing the farming operations

and in marketing the crops, for which services he was to receive an equal joint interest with the Paslays in the personal property and unsold crops remaining in the hands of the Paslays, after their debt to the Interstate Grocer Company should be paid. The purpose of the contract was clearly to enable the Paslays, with the assistance of E. P. Moore, to pay their indebtedness to the Interstate Grocer Company. It contained no provision that Moore should share in the losses or share in the profits as profits. Under the terms of the contract, Moore agreed to assist the Paslays in financing the farming operations and in marketing the crops raised on the farms, and in payment for such services was to receive an equal joint interest with the Paslays in the personal property and unsold crops after the payment of their debts to the Interstate Grocer Company. An agreement that one shall receive for his services a part of the profits of the business does not make him a partner in the venture. Such an agreement is one of employment, and not of partnership. *Haycock* v. *Williams*, 54 Ark. 384, 16 S. W. 3; *LaCotts* v. *Pike*, 91 Ark. 26, 120 S. W. 144, 134 Am. St. Rep. 48. The necessary essentials to constitute a partnership agreement do not appear in the written contract. It is a contract in the nature of a joint venture only.

Appellant contends, however, that, though he sought to recover from appellees the account in question on the ground that they were partners with the Paslays, yet, under the terms of the contract, E. P. Moore was directly liable for the indebtedness on account of his agreement to assist the Paslays in financing the farming operations. He argues that the trial court should have treated the pleadings as amended, and should have rendered a judgment in any event against E. P. Moore individually, because he undertook to assist the Paslays in financing and in providing the necessary equipment to operate the farms. We do not think an undertaking of this kind meant that Moore should pay all of the bills that Paslay

might make in the operation of the farms.    Had this been the meaning of the contract, Moore would have been the employer and the Paslays the employees, whereas the contract provides that the Paslays are the employers and Moore the employee.

No error appearing, the judgment is affirmed.